UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NOVENDER FLEMING, | ) | |
| | ) | |
| Plaintiff(s), | ) | No. C09-1613 BZ |
| | ) | |
| v. | ) | |
| | ) | |
| NADIA CLARK, et al., | ) | |
| | ) | and Consolidated Case |
| Defendant(s). | ) | |
| | ) | |
| VICTOR JONES, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | No. C09-4757 BZ |
| v. | ) | |
| | ) | **SUMMARY JUDGMENT ORDER** |
| NADIA CLARK, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

This civil rights action arises out of an Oakland police investigation of suspected marijuana cultivation at the home of plaintiffs Novender Fleming and Victor Jones.  Plaintiffs allege four Fourth Amendment violations: (1) the investigation was not pursuant to a warrant supported by probable cause (fifth cause of action), (2) the Oakland police did not comply with knock-and-announce requirements (first cause of action),

1

(3) the Oakland police used excessive force in detaining plaintiffs (second cause of action) and (4) the Oakland police unreasonably seized one of Jones' firearms (fourth cause of action).  Additionally, plaintiffs bring a <u>Monell</u> claim against the City of Oakland for failing to properly train police officers regarding California's medical marijuana laws (sixth cause of action).  Finally, plaintiffs allege a First Amendment violation (third cause of action) and various state law torts (seventh, eighth, ninth, tenth and eleventh causes of action). For the reasons set out below, plaintiffs' motion for summary judgment is **DENIED**, and defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

### Statement of Facts

Plaintiff Victor Jones ("Jones") is a 60 year old man with gout.[1]  Pursuant to California law, he received physician approval to grow marijuana for medical purposes in approximately 1998.  Jones resides at 1078 55th Street in Oakland, California.  Plaintiff Novender Fleming ("Fleming") was one of his visitors at the time the warrant was executed.

On September 2, 2008, the Oakland Police Department received information from a confidential informant that marijuana cultivation was taking place at Jones' residence.  To verify the information, Officers Clark and Boracio went to an undisclosed location to view Jones' yard.  From this location, Officers Clark and Barocio claim they saw, with "a clear and unobstructed" view of Jones' yard, two large marijuana plants

---

[1]    Unless otherwise noted, the facts are not in dispute.

1  and ten to fifteen small marijuana plants.  Plaintiffs,
2  however, assert that there were only six marijuana plants and
3  that Officer Clark told Jones she had found six plants.

4       On September 2, Officer Clark applied for a search warrant
5  for the house and submitted an affidavit to an Alameda County
6  Superior Court Judge describing her observations of Jones'
7  residence and stating that based on her training and experience
8  she believed its occupants were illegally cultivating
9  marijuana.  On September 3, the warrant issued.  The warrant
10 authorized Oakland Police Officers to enter and search the
11 "rooms, attics, basements, containers and other parts of the
12 residence."

13      At approximately 4:00 p.m. on September 3, seven Oakland
14 Police Officers (Officers Clark, McMillan, Gerrans, Miller,
15 Thompson, Vergara and Sergeant Ortiz) went to Jones' residence
16 to serve the search warrant.  Officer Clark announced the
17 presence of the police by knocking on the metal security gate
18 outside the residence and yelling "Oakland Police Department,
19 Search Warrant."  About ten seconds after announcing their
20 presence, Officers Clark, McMillan and Gerrans heard movement
21 inside the house, but no one opened either the metal security
22 gate or an inner wooden door.  At that point, Clark testified,
23 she feared that people inside the residence were arming
24 themselves or destroying evidence, so she ordered McMillan to
25 break down the metal security gate.  McMillan was not able to
26 immediately break open the security gate.  After a few attempts
27 Jones came to the gate from the inside of his house.  Officers
28 Clark and Gerrans pointed their guns at Jones.  Fleming came to

3

the door at the same time as Jones, but she was not visible to
the police officers.  Jones yelled to the officers that he
could not open the security gate.  Fleming attempted to open
the security gate, but was hit on the hand with "hook and key"
instruments, devices used to forcibly open doors, while
McMillan was trying to break it open.  While Gerrans states
that he saw someone trying to open the security gate from the
inside and yelled "stand away from the door," Fleming claims
the police never told her to stand away from the door.
Eventually, McMillan broke open the door.

Once the police officers entered the residence, Jones and
Fleming were handcuffed and held at gun point while the
officers conducted a "cursory search" to secure the premises.
During the search, Officer Clark found a loaded .38 caliber
revolver, which she confiscated.  While Officer Clark claims
that Jones and Fleming were released from handcuffs and not
held at gunpoint after the cursory search was completed in
about five minutes, plaintiffs claim they were handcuffed and
held at gunpoint for forty-five minutes to an hour.

Officer Clark found six marijuana plants in the backyard.
Jones told Clark he had a "current cannabis grower's permit"
and showed it to police officers.[2]  Additionally, Jones told
Clark that the revolver was unregistered and had belonged to
his deceased wife.  No one was arrested at the scene and no
charges were filed.

Defendants now move for summary judgment, and plaintiffs

---

[2]     Jones did not introduce a permit or marijuana
identification card into evidence.

1  cross-move for summary judgment on their excessive force claims

2  and their <u>Monell</u> claim against the City of Oakland.

3                          **Legal Standard**

4                         **QUALIFIED IMMUNITY**

5       Plaintiffs allege three discrete constitutional

6  violations, and defendants raise the defense of qualified

7  immunity to each allegation.  To resolve a claim of qualified

8  immunity, a Court must determine (1) whether the plaintiff has

9  proven a violation of a constitutional right and (2) whether

10 that right was clearly established.  <u>Pearson v. Callahan</u>, 129

11 S.Ct. 808, 818 (2009).  It is within the Court's discretion to

12 begin with the first or second factor.  <u>Id.</u>  When determining

13 whether an officer's conduct violated a constitutional right,

14 the facts are viewed in the light most favorable to plaintiff.

15 <u>Eng v. Cooley</u>, 552 F.3d 1062, 1067 (9th Cir. 2009).  The court

16 must determine "whether the preexisting law provided the

17 defendants with fair warning that their conduct was unlawful."

18 <u>Flores v. Morgan Hill Unified Sch. Dist.</u>, 324 F.3d 1130,

19 1136-37 (9th Cir. 2003) (internal quotes omitted).

20     Whether the right is clearly established is judged as of

21 the date of the alleged incident and is a pure question of law.

22 <u>Phillips v. Hust</u>, 477 F.3d 1070, 1079 (9th Cir. 2007).

23 However, any genuine issues of material fact concerning the

24 underlying historical facts of what the officer knew or what he

25 did are questions of fact for the jury.  <u>Sinaloa Lake Owners</u>

26 <u>Ass'n v. City of Simi Valley</u>, 70 F.3d 1095, 1099 (9th Cir.

27 1995).

28     **I.   PROBABLE CAUSE TO INVESTIGATE MARIJUANA CULTIVATION**

                                   5

1    Plaintiffs claim that the Oakland police's execution of

2 the search warrant violated the Fourth Amendment because the

3 warrant was not supported by probable cause.  Specifically,

4 they claim that the application did not establish that Jones'

5 cultivation of marijuana was unlawful given that California had

6 partially legalized marijuana in the Compassionate Use Act of

7 1996 ("CUA")[3] and the Medical Marijuana Program Act ("MMP").[4]

8    The parties agree that Officer Clark swears she saw

9 marijuana plants in plaintiffs' backyard prior to applying for

10 a search warrant, and that growing marijuana is illegal in

11 California unless the cultivator possesses a physician's

12 recommendation.

13    Since the Oakland police were investigating a possible

14 violation of California Law, probable cause analysis begins

15 _____

16    [3]    California Health and Safety Code § 11362.5(d)
provides that statutes prohibiting possession and cultivation
17 of marijuana, "shall not apply to a patient, or to a patient's
primary caregiver, who possesses or cultivates marijuana for
18 the personal medical purposes of the patient upon the written
or oral recommendation or approval of a physician."

19    [4]    In 2003, the California Legislature passed the MMP,
which established a voluntary identification card system that
20 allows law enforcement officials to easily identify authorized
medical users.  See California Health and Safety Code §
21 11362.71(e).  In full, California Health and Safety Code §
11362.71(e) provides:
22

23    No person or designated primary caregiver in
possession of a valid identification card shall be
24    subject to arrest for possession, transportation,
delivery, or cultivation of medical marijuana in an
25    amount established pursuant to this article, unless
there is reasonable cause to believe that the
26    information contained in the card is false or
falsified, the card has been obtained by means of
27    fraud, or the person is otherwise in violation of the
provisions of this article.

28 Id.

with the elements of the state crime they were investigating.
See Brown v. Gossett, 2006 WL 213732 at *5 n.2 (N.D. Cal.
2006).  California law treats the CUA as having established
nothing more than an affirmative defense to a marijuana crime.
See People v. Mower, 28 Cal.4th 457, 470 (2002); People v.
Fisher, 96 Cal.App.4th 1147, 1151-52 (2002).  In People v.
Fisher, the Court of Appeal affirmed the validity of a search
conducted pursuant to a warrant issued after police had
observed marijuana growing in defendant's yard.  Although
defendant had advised the police that he had a permit to grow
marijuana before they conducted the search, the Court ruled
that the possibility that the defendant might have an
affirmative defense were he charged did not negate probable
cause for issuing the warrant.  Other federal courts have
reached similar conclusions.  See Rolon v. L. A. Cnty., 2008 WL
4960442 (C.D. Cal. 2008); Wilson v. City of Merced, 2008 WL
4737159 (E.D. Cal. 2008).  Such rulings are in accord with the
principle articulated by the United States Supreme Court in
Virginia v. Moore, 553 U.S. 164 (2008), that whether a search
is reasonable under the Fourth Amendment does not necessarily
turn on defenses available under state law.  Id. at 170-172.

        Additionally, accepting plaintiffs' argument would place a
heavy burden on law enforcement.  While plaintiffs argue that
defendants should have somehow "checked" whether they were
authorized to cultivate marijuana prior to getting a search
warrant, plaintiffs did not explain in either their papers or
in open court how defendants would perform this check.  At oral
argument, counsel for plaintiffs suggested that the police

1   should have asked Jones whether he had physician's approval to

2   grow marijuana prior to applying for a search warrant.  This

3   strategy, however, would be counterproductive if their suspect

4   was not growing marijuana legally.  At argument, defendants

5   asserted and plaintiffs did not dispute, that there is no

6   method of checking for a medical marijuana permit by name or

7   address and that the creation of such a process could raise

8   medical privacy issues.  See generally, Guidelines for the

9   Security and Non-Diversion of Marijuana Grown for Medical Use

10  at 6, available at:  http://www.ag.ca.gov/cms_attachments/press/pdfs/

11  n1601_medicalmarijuanaguidelines.pdf.

12       Accordingly, the Court **GRANTS** defendants' summary judgment

13  motion on plaintiffs' claim that their residence was searched

14  pursuant to a warrant not supported by probable cause.

15  Moreover, since plaintiffs' improper search warrant claim was

16  the basis for their Monell claim, the Court also **GRANTS**

17  Oakland's motion for summary judgment on plaintiffs' Monell

18  claim.

19       **II.  EXCESSIVE FORCE CLAIMS**

20       Plaintiffs bring two Fourth Amendment excessive force

21  claims.  Plaintiffs first argue that the Oakland police waited

22  an unreasonably short time between knocking and announcing and

23  breaking Jones' security gate.  Fleming's hand was injured

24  while Oakland police were breaking open the gate.  Second,

25  Plaintiffs argue that they were unreasonably held in handcuffs

26  at gunpoint for approximately one hour.  In response,

27  defendants claim that plaintiffs were only held in handcuffs at

28  gunpoint during a five minute cursory search during which the

1  police secured the residence, and that after the cursory search
2  the plaintiffs were released.

3      **A. IMPROPER KNOCK AND ANNOUNCE**

4          In determining whether the execution of a search warrant
5  meets the Fourth Amendment's reasonableness standard, the
6  Supreme Court has "consistently eschewed bright-line rules,
7  instead emphasizing the fact-specific nature of the
8  reasonableness inquiry." <u>Ohio v. Robinette</u>, 519 U.S. 33, 39
9  (1996); see also <u>United States v. Banks</u>, 540 U.S. 31, 35-36
10 (2003).  One requirement incorporated into the Fourth Amendment
11 reasonableness standard, though, is the common law requirement
12 that officers knock and announce their presence and then wait
13 either to be refused entry into a residence or until exigent
14 circumstances arise.  <u>Wilson v. Ark</u>., 514 U.S. 927, 934 (1995).
15 Exigent circumstances include the risk that evidence of a crime
16 will be destroyed while officers wait.  See <u>Banks</u>, 540 U.S. at
17 38.

18      This is one of those cases where the issue of whether the
19 police waited a reasonable period of time before breaking down
20 the door, given the totality of the circumstances, is
21 appropriate for jury disposition.  <u>Howell v. Polk</u>, 532 F.3d
22 1025, 1026 (9th Cir. 2008).  Unlike <u>Banks</u>, in which the Court
23 found a 15-20 second wait period to be reasonable where the
24 officers were investigating the sale of cocaine, here the
25 officers had only established probable cause to believe that
26 marijuana was being grown illegally.  The facts in Officer
27 Clark's affidavit do not establish probable cause to believe
28 that defendants were engaged in the sale of drugs.  Moreover,

1  cocaine is easily flushed down a drain, while marijuana plants

2  are not.  See United States v. Maher, 185 F.Supp.2d 826, 832

3  (W.D.Mich. 2001) (marijuana plants not easily disposable).  See

4  also Banks, 540 U.S. at 41 ("police seeking a stolen piano may

5  be able to spend more time to make sure they really need the

6  battering ram.").  There is also a dispute over whether the

7  noises defendants heard sounded as though the plaintiffs were

8  arming themselves or trying to dispose of evidence or whether

9  they sounded as though the plaintiffs were coming to the door.

10 Finally, there is a dispute over whether plaintiffs approached

11 the door while it was being broken down after being ordered to

12 do so, as plaintiffs claim, or whether defendants told

13 plaintiffs to back away from the door.

14      Finding that defendants as a matter of law could knock

15 down the front door once they heard movement inside the house,

16 as defendants suggest, could eviscerate the knock and announce

17 requirement.  Since police ordinarily are required to announce

18 their entry and ask the occupants to open the door, if every

19 movement inside the house allows the police to infer that

20 evidence is being disposed of or that the occupants are arming

21 themselves, the door could be broken down in virtually ever

22 instance.  Clearly, that is not what the Supreme Court had in

23 mind when it ruled in Banks.

24      Accordingly, the Court **DENIES** defendants' motion for

25 summary judgment on plaintiffs' first cause of action.

26      **B.   UNREASONABLE USE OF HANDCUFFS AND GUNS**

27      To determine whether the Oakland police's use of force was

28 reasonable under the circumstances, this Court must balance

10

1   "the nature and quality of the intrusion on a person's liberty

2   with the countervailing governmental interests at stake."

3   <u>Davis v. City of Las Vegas</u>, 478 F.3d 1048, 1054 (9th Cir. 2007)

4   (citations omitted).  In performing this calculus, the court

5   must "assess the quantum of force used" and then "measure the

6   governmental interests at stake" by considering "(1) the

7   severity of the crime at issue, (2) whether the suspect poses

8   an immediate threat to the safety of the officers or others,

9   and (3) whether he is actively resisting arrest or attempting

10  to evade arrest by flight."  <u>Id.</u>  (citations omitted).  Because

11  cases involving police misconduct almost always involve

12  disputed factual contentions and turn on credibility

13  determinations, the Ninth Circuit has "held on many occasions

14  that summary judgment or judgment as a matter of law in

15  excessive force cases should be granted sparingly."  <u>Drummond</u>

16  <u>v. City of Anaheim</u>, 343 F.3d 1052, 1056 (9th Cir. 2003) (citing

17  <u>Liston v. Cnty. of Riverside</u>, 120 F.3d 965, 976 n.10 (9th Cir.

18  1997) (citing several cases)); see also <u>Davis</u>, 478 F.3d at

19  1054-55 (stating that these "cases almost always turn on a

20  jury's credibility determinations").

21       Here, there is not much evidence to support defendants'

22  position.  Seven armed officers were investigating the

23  cultivation of 6-10 marijuana plants, which cultivation might

24  be legal in California.  There is no suggestion that the

25  officers believed the occupants of the building posed a threat

26  to officer safety or that they would actively resist arrest or

27  attempt to flee.  And the facts of what happened inside the

28  house are materially in dispute.  Plaintiffs claim that they

1   were handcuffed and held at gunpoint for forty-five minutes to

2   an hour.  Defendants claim that the search took only five

3   minutes and that the handcuffs were then removed.  Plaintiff

4   Jones asserts that he was forced into signing an affidavit that

5   he had 3 illegal plants because he was being held handcuffed

6   and at gunpoint.  Defendants assert that Jones was not

7   handcuffed or being held at gunpoint at the time he was being

8   questioned and that the statement only contained the

9   information he gave them.

10      Since there are several disputed issues of fact regarding

11  the length of the search, the use of handcuffs and the use of

12  guns, the Court finds this issue inappropriate for disposition

13  on summary judgment and therefore **DENIES** plaintiffs' and

14  defendants' motions.

15      **III.  First Amendment Claim**

16      Defendants moved for summary judgment on plaintiffs' First

17  Amendment claim summarily arguing that the claim is unclear and

18  barred by qualified immunity.  Plaintiffs declined to respond

19  to defendants argument or defend their third cause of action.

20  The Court agrees that the claim is entirely unclear and

21  defendants' motion for summary judgment on this claim is

22  **GRANTED**.

23      **IV.  State Torts**

24      At the hearing, plaintiffs announced that they had

25  dismissed their claim for conversion.  Since plaintiffs did not

26  oppose defendants' motion for summary judgment as to their

27  eighth, ninth, and tenth causes of action, the motion on those

28  causes of action is **GRANTED**.  Plaintiffs articulated at the

1   hearing that their negligence claim essentially dovetails with

2   their claim for excessive force and unlawful entry under

3   Section 1983.  As I have found that those claims survive

4   summary judgment, defendants' motion as to plaintiffs' eleventh

5   cause of action is **DENIED**.

6   **Conclusion**

7   **IT IS THEREFORE ORDERED AS FOLLOWS:**

8   1.  Plaintiffs' motion for summary adjudication is **DENIED**.

9   2.  Defendants' motion for summary judgment is **GRANTED** as

10  to plaintiffs' **THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, EIGHTH,**

11  **NINTH, and TENTH** causes of action.

12  3.  The Court finds that the search of Plaintiff Jones's

13  home was supported by probable cause.

14  4.  Defendants' motion for summary judgment is **DENIED** as

15  to plaintiffs' **FIRST, SECOND, and ELEVENTH** causes of action.

16  DATED: September 8, 2010

17  _____
                    Bernard Zimmerman
18                  United States Magistrate Judge

19

20

21
    g:bzall\-bzcases\Fleming v. Clark\SJ Order BZ FINAL VERSION 3.wpd
22

23

24

25

26

27

28